IN THE UNITED STATES DISTRICT COURT
FO THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA CHRISTINE DICKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 10-0337-CG-C |
| PHYSICIANS PAIN SPECIALISTS OF | ) |
| ALABAMA, P.C., | ) |
| | ) |
| Defendant, | ) |

## ORDER

This matter is before the court on the plaintiff's motion to amend the complaint (Doc. 56) and the defendant's motion to dismiss or, in the alternative, for summary judgment. (Doc. 48). The court has reviewed the parties' briefs, (Docs. 49, 57, 60, and 61), and, for the reasons set forth herein, the court finds that the plaintiff has not exhausted available administrative remedies as required by the Employee Retirement Income Security Act of 1974 ("ERISA"). Therefore, the defendant's motion for summary judgment is **GRANTED**. The defendant's motion to dismiss and the plaintiff's motion to amend are **DENIED** as moot.

### I. FACTUAL BACKGROUND

The plaintiff, Amanda Christine Dickerson ("Dickerson"), is a former employee of the defendant, Physicians Pain Specialists of Alabama, P.C. ("PPSA"). (Doc. 57, p. 1). As an employee, Dickerson was a participant in PPSA's group health

1

insurance plan (the "Plan"), an employee benefits plan which was sponsored and administered by PPSA and subject to the terms of ERISA.  Id.  PPSA contracted with Blue Cross-Blue Shield of Alabama ("BCBS") to insure the Plan and administer claims for benefits.  (Doc. 49, p. 2).

At the time PPSA applied for a group health care plan in December 2000, it employed fewer than 20 people, and therefore qualified as a small employer, which BCBS calls a "Category A" employer.  Id.  In November 2007, PPSA received a letter from BCBS, which stated that PPSA was still classified as a "Category A" employer and requested that PPSA update its information if this classification was incorrect.  Id.  On November 14, 2007, Ken Cross, the office administrator for PPSA, returned an updated form to BCBS, indicating that PPSA was a "Category B" employer, meaning that it had more than 20 employees.  Id.  As a "Category B" employer, PPSA was required to have a plan offering COBRA benefits, which consist of continuing coverage for employees who might otherwise lose their benefits because of a "qualifying event," such as termination of employment.  (Doc. 57, p. 2).  Approximately one year later, in November 2008, Cross sent a second form to BCBS indicating that PPSA was a "Category B" employer.  Id. at 3.  Nevertheless, COBRA coverage was not added to the PPSA Plan.  Id.

On June 27, 2008, Dickerson resigned her position at PPSA, effective as of July 11, 2008.  Id. at p. 2.  At the time of her resignation, Dickerson approached Cross and "asked him about" COBRA coverage once her resignation became effective.  (Doc. 57-2, p. 4).  Cross told Dickerson that PPSA did not offer COBRA

2

coverage, and the two did not discuss the matter further. Id. Accordingly, PPSA never extended COBRA coverage to Dickerson, nor provided her with notice of COBRA coverage. (Doc. 57, p. 3).

In December 2008, approximately five months after resigning from her job, Dickerson was rehired by PPSA, and as of December 1 of that year, she was once again covered under the Plan. (Doc. 49, p. 3). During the four months in 2008 that she was not employed by PPSA, Dickerson broke her foot and suffered a mild stroke, both incidents requiring medical care. (Doc. 57, p. 3). On December 30, 2009, Dickerson and her husband filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Alabama, Case No. 09-16012. Id. In her schedule of unsecured creditor claims, she listed the medical care providers which provided services to her during the four months that she was without health insurance in 2008. Id. at 4. On April 12, 2010, the Bankruptcy Court granted the Dickersons a discharge from their debts under Section 727 of the Bankruptcy Code. (Doc. 49, p. 4). The Bankruptcy Court's final decree was issued four days later, on April 16, 2010, which discharged the bankruptcy trustee and closed the Chapter 7 case. (Doc. 57, p. 4).

In March 2010, counsel for Janice Bishop, a former co-employee of Dickerson at PPSA, contacted PPSA and asked why Bishop had not been offered COBRA coverage after leaving her employment with PPSA. Id. at p. 4. Cross, PPSA's office administrator, researched the issue, determined that an employer with 20 or more employees was required to offer COBRA coverage, and called PPSA's BCBS

representative, who told him that PPSA should have been offering COBRA benefits to its employees. Id. The BCBS representative later acknowledged that BCBS had a copy of Cross's November 2008 notice that PPSA was a "Category B" employer. Id. On April 20, 2010, PPSA sent a letter to BCBS requesting that it commence COBRA coverage for its employees, effective retroactively to January 1, 2010. Id. at pp. 4-5.

On June 30, 2010, Dickerson and Bishop filed this lawsuit against PPSA and BCBS. (Doc. 49, p. 5). Bishop's claims were voluntarily dismissed with prejudice on July 13, 2011. (Docs. 44 and 45). Dickerson's complaint includes multiple counts alleging that PPSA violated her ERISA rights, and one count alleging state law misrepresentation.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243

4

(11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that

5

precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in [the non-moving party's] pleading; rather, its response .... must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation and citation omitted).

### III. LEGAL ANALYSIS

#### A.     PPSA's MOTION FOR SUMMARY JUDGMENT

#### (1) ERISA Claims

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001 et seq., is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (quotation omitted). In 1985, the Consolidated Omnibus Budget Reconciliation Act ("COBRA") added

provisions to ERISA which permit a beneficiary of an employer's group health plan to elect continuing coverage when he or she might otherwise lose that benefit because of a "qualifying event," such as termination of employment. Geissal v. Moore Medical Group, 524 U.S. 74 (1998).

ERISA requires that every employee benefit plan contain an appeals procedure which affords "a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Section 503, ERISA (codified at 29 U.S.C.A. § 1133(2)); Mason v. Continental Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985). Also, as part of ERISA's "closely integrated regulatory system," Congress included an exclusive civil enforcement scheme at § 502(a) of ERISA (codified at 29 U.S.C. § 1132(a)) ("Section 502"), which is "one of the essential tools for accomplishing the stated purposes of ERISA." Ingersoll-Rand at 137 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987)). ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (quoting Mertens v. Hewiit Assoc., 508 U.S. 248, 254 (1993).

**(a)  Exhaustion of Administrative Remedies**

Although the text of ERISA is silent on the matter, the Eleventh Circuit Court of Appeals requires that a plaintiff exhaust her available administrative remedies before bringing ERISA claims in federal court. Mason v. Continental

7

Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985); Counts v. American General Life and Acc. Ins. Co, 111 F.3d 105, 108 (11th Cir. 1997); Springer v. Wal-Mart Associates' Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990). The Eleventh Circuit Court of Appeals applies this rule to claims for benefits as well as claims for statutory violations of ERISA. Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 (11th Cir. 2006).

That being said, there are well-established exceptions to the exhaustion requirement, "the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate." Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980) (quotation omitted). Thus, the application of the exhaustion requirement is committed to the district court's sound discretion. Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir 1990) abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co., 247 F.3d 1313 (11th Cir. 2001).

Dickerson argues that the futility exception to the exhaustion requirement should apply in this case based on her 2008 conversation with Cross, where she asked for COBRA coverage and was told that PPSA did not offer that benefit, even though PPSA was in fact required to have COBRA plan available to its employees. (Doc. 57, p. 11). Dickerson claims that she made an "unambiguous application for benefits" and argues that Cross's response counts either as a formal or informal administrative decision denying benefits. Id. (citing Peck v. Aetna Life Insurance

Co., 464 F.Supp.2d 122, 126 (D. Conn. 2006)[1]. Dickerson also points to page 13 of the Blue Cross Blue Shield of Alabama Group Health Benefits Plan (the "Plan") (Doc. 57-5, p. 2), which states clearly that Blue Cross Blue Shield is not the plan administrator, and directs the reader to contact his or her employer to determine whether the plan is covered by COBRA. (Doc. 57, p. 13). Having established that she asked for COBRA coverage and was told that such coverage was unavailable, Dickerson claims that she has demonstrated the futility of pursing further administrative remedies outside of this court. Id. at p. 14.

Based on the summary judgment record before it, the court finds that Dickerson has not made the requisite "unambiguous application for benefits" upon which to base an application of the futility doctrine, and therefore, the court declines to waive the exhaustion requirement. The only evidence that Dickerson took any action whatsoever to obtain a continuation of her insurance coverage is her deposition testimony that she approached Cross and "asked him about" COBRA coverage once her resignation became effective. (Doc. 57-2, p. 4). She further testified that, once Cross told her that PPSA did not offer COBRA coverage, the two did not discuss the matter further. Id. at pp. 4-5. There are no facts in the record which document any further attempt by Dickerson to even look into the matter, short of filing suit in federal court. Instead, Dickerson simply took Cross at his word, without taking any affirmative steps to determine for herself what the proper

---

[1] Dickerson's brief (Doc. 57, p. 11) actually cites McNinch v. Goodyear Tire & Rubber Co., 2005 WL 735963, *4 (W.D.N.Y. 2005), however, the holding referenced in the citation is from Peck, supra.

9

claims procedures were; therefore, she did not avail herself of those procedures. The futility exception excuses a plaintiff from clearly unproductive efforts because no further purpose would be served by requiring further exhaustion. Barnett v. International Business Machines Corp., 885 F.Supp. 581, 588 (S.D.N.Y. 1995). However, if an informal or unsubstantiated denial of a "claim" that was never filed or formally presented is reviewable in the federal courts, then, in such situations, the courts and not ERISA trustees will be primarily responsible for deciding claims for benefits. Id. That is clearly at odds with the civil enforcement scheme mandated by Congress.

Accordingly, PPSA's motion for summary judgment with regard to Dickerson's ERISA claims is granted.

## (2) State Misrepresentation Claims

Dickerson also brings a claim for misrepresentation against PPSA pursuant to Alabama state law.

Section 514(a) of ERISA, as codified at 29 U.S.C. §1144(a), provides for the preemption of state laws "insofar as they may now or hereafter relate to any employee benefit plan…" The Supreme Court has held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Ingersoll-Rand, Inc. v. McClendon, 498 U.S. 133, 139 (1990). It is established precedent in the Eleventh Circuit that, "where state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its

10

benefits system." Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc., 57 F.3d 1040, 1042 (11th Cir. 1995). Where such a nexus with an ERISA plan exists, preemption is appropriate.

Dickerson argues that no such nexus exists between her misrepresentation claim under Alabama law and ERISA because, at the time Dickerson spoke to Cross about COBRA coverage, PPSA did not have such coverage available to its employees. (Doc. 57, p. 16). Dickerson even goes so far as to assert that "[i]n this case, there was no ERISA plan." Id. However, this claim is contradicted by Dickerson's own assertion, earlier in her brief, that "Dickerson was a participant in PPSA's group health insurance plan…, an employee benefits plan governed by the terms of ERISA." (Doc. 57, p. 1).

Despite Dickerson's claims to the contrary, the record evidence makes clear that PPSA's group health plan "was governed by the terms of ERISA," as both parties stipulated in their respective summaries of undisputed facts. (See Doc. 57, p. 1 and Doc. 49, p. 1). What was missing was COBRA coverage, which does not eliminate a nexus with ERISA and its benefits system. Therefore, PPSA's motion for summary judgment is due to be granted with regard to Dickerson's state law misrepresentation claim.

## IV. CONCLUSION

Upon a thorough analysis of all matters presented, the court concludes that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. PPSA's motion for summary judgment (Doc. 48) is therefore **GRANTED** as to all claims. Dickerson's failure to exhaust available administrative remedies is dispositive, regardless of whether Dickerson or the bankruptcy trustee brings suit. Therefore, the court does not address the standing issues raised by the parties. Accordingly, the defendant's motion to dismiss (incorporated in Doc. 48) and the plaintiff's motion to amend (Doc. 56) are **DENIED** as moot.

**DONE** and **ORDERED** this 4th day of October, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE